Good morning, Your Honors. Deanna Dotson on behalf of the appellant, Mr. NoBriga. Today I'd like to talk about, there are just two major issues in this appeal. The first one is the denial of his motion to dismiss the indictment based on the underlying predicate charge. He was up for felon in possession, which requires a charge that he was a felon before he can have that charge. Looking at the underlying charge, it was a misdemeanor domestic violence charge. And if we look at the documents that were submitted to the court, which is only the complaint, amended complaint, and the judgment, it's really not clear, just on the face of those documents, that it fulfills the violent use of force that is required under the statute for this to be a predicate charge for felon in possession. If you look at the judgment, it's marked that it's a charge against the statute for domestic violence. It doesn't state, the statute under domestic violence has two prongs, which were discussed with the court, that both, one prong might qualify, the other prong definitely does not. The term domestic or physical abuse is not defined in the statute. It doesn't state if it needs an amount of violence or force under the statute. In the amended complaint, it just, it uses the term striking, but it doesn't define striking. There's no record as to exactly what Mr. Nobrega pled the charge. Kagan. What's an example of striking that wouldn't be physical violence or physical force? Pardon? What is an example of striking that would not be a violent use of physical force? If somebody was just throwing their hand back to maybe make a gesture and hit, that could be called a striking, but that wouldn't be a physical violence. That would be a strange use of the word striking, wouldn't it? Pardon? That would be a strange use of the word striking. With no definition, we don't know what striking meant. There's no definition of striking anywhere. It just uses that term. There's no record or transcript of exactly what Mr. Nobrega pled to, what kind of conduct he pled to. He pled no contest to the charges as read. We don't even know for sure that it was the amended complaint that used the word striking. It could have been the first complaint. We don't know. It can be assumed it was the one that used striking. However, again, the term striking is not defined. And in order for it to be a predicate offense, it has to have this physical force, the violent use of force, not just minor force, not a de minimis force, as stated in the Bellis case. The Bellis case was a similar case where it had two parts to this statute. And even though he was charged with the more violent part, the courts found because there was nothing in the record to state exactly what he pled to, you could not determine whether or not that was that conduct, what he was pleading to. And it's the same thing in this case. There's no record. There's nothing, there's no transcript. There was nothing during the plea that states exactly. What's your second argument that you want to raise? Because I think there's a lot to discuss there about what's exactly in the record. But I think we need to really discuss it with the government. Okay. So you want me to move on to the next issue? What was your second issue that you think is really important? The second issue is the Booker issue, which would be that his sentence was enhanced for the gun being stolen, and he was not aware of that particular, it wasn't charged. He made an appeal with regard to any sentence within the statutory maximum. Correct, he did. However, what's the ---- It wasn't within the statutory maximum. It wasn't within ---- It was within the statutory maximum after Booker or before Booker. It's not within the statutory maximum, in my opinion, reading Booker after Booker, which Booker would apply because this case is on appeal, because the statutory maximum is any facts that he admitted on the record or were found by a jury. He did not admit to the gun being stolen. There was nothing in the record. There was nothing during the plea colloquy. There was nothing that stated anything about this gun. So ---- Let me see if I can understand what you're saying. The gun went to a guidelines question. It didn't go to what statute it was convicted of. Is that right or wrong? Correct. It went to an enhancement guideline issue. All right. So the statute, as to the statute he was convicted under, he was sentenced within the statutory maximum. No, he was not. Okay. Explain that. Okay. Because his sentence was enhanced by two levels. Your argument is the statutory maximum is measured by the guidelines, not by the statute. That has to be where you're departing from. Well, the statutory ---- my understanding is under Booker, the statutory maximum is the statutory maximum under the guidance. Constitutional maximum. That may be the constitutional maximum. But what ---- but where are you getting the idea that a statutory maximum isn't the maximum set by the statute? No, this ---- his sentence was enhanced over and above what the statute said. What statute? The statute for felon in possession. It would have been a level 14. He then received two ---- That's not a statute. That's a guideline. Well, my understanding is the statute for the violation of the felon in possession gun. That statute had a level 14. He was allowed a two-point deduction for acceptance of responsibility. And then the probation department in presentence report added an additional two-level enhancement for the gun being stolen. So, therefore, that reached his ---- the level that he was sentenced at. But that wasn't the statutory maximum under the statute he was sentenced. It was an added enhanced ---- You know, that may ---- I think what Judge Berzon is the point that she's trying to get to is that if that may be a violation of apprentice, for example, if the judge found that without the jury and or without the defendant having admitted to those facts. But it's not a Sixth Amendment violation because the actual statute provides that the maximum is some number of years without reference to the guidelines. Now, the statute sets a maximum. The guidelines are for sentencing within the statutory maximum. What we've learned from Blakely and Booker is that the constitutional rule of apprendi applies to those circumstances. But that doesn't change the concept of what is a statutory maximum. And he was sentenced within the maximum set by the sentence, so by the statute. So where would you get the notion that he has preserved the right to appeal a guidelines issue? Well, because my understanding, and maybe I'm incorrect in reading of Booker, is a statutory maximum is what the maximum is under the guidelines. That's what I'm not understanding. That's the part of your argument that needs to be explained. Well, that's, I guess, I'm ---- that's my interpretation of what the Booker case is saying, that you look to the statutory maximum based on the facts that were admitted. Or proven by the jury. So you're saying that these were facts that were judge-found facts. Correct. And that that's the error, not that it's a Sixth Amendment error. Well, that is a Sixth Amendment error, though, because he was ---- Well, it's another type. It's not a Booker error. Because under Booker, you're free to sentence to the statutory maximum. Well, my understanding is the statutory maximum, though, would be the maximum set by what was admitted and what level that would equate to in the guidelines. Booker now says that you ---- that the guidelines are unfinding anyway, so there isn't a guideline maximum. The only maximum is the statutory maximum. Correct. Okay. Well, in ---- But did he admit to having the firearm? He admitted that he did have possession of it because ---- but not stealing it. Because he was ---- someone had the gun. The facts are really unclear, but what Mr. Neuberger testified is he ---- there was a struggle for the gun because the man was going to shoot him. He grabbed the gun. Meanwhile, somebody else was shooting at him, shot him several times. Right. So he had possession of the gun. He admitted he had possession, but he did not admit that he stole the gun, which is ---- Can I ask one other question to go back to the earlier problem? Do you have a second argument that you're making with regard to why the statute ---- the Hawaii statute does not reach his contract having to do with his relationship with the woman who was the victim? My understanding is that you also argued that, aside from the physical abuse question, that the Hawaii statute and the Federal statute don't match up, and it appears to me that they don't match up, with regard to the requisite relationship between the perpetrator and the victim. That's correct, Your Honor. It was not mentioned anywhere, either in the complaint or in the judgment, the relationship. It said a household member, which she was not a household member. She was a girlfriend, but it didn't state anywhere that relationship to conform to the Hawaii statute, domestic violence statute. He did say at the district court hearing that, in this case, that it was his girlfriend. He stated it was his girlfriend, but a girlfriend is not one of the categories. And he wasn't living with her at the time. It was a former girlfriend. And so that did not fit one of the categories for the Hawaii statute, based on just the information that was in the documents presented to the court, the complaint and the judgment and during the plea colloquy. That was the only information that was brought out. May I reserve the remaining? You have no time left. You're over time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Wes Porter. I'm an assistant United States attorney. I represent the United States in this matter, the appellee. I'll first address the predicate offense issue. Before the district court, this was undisputed that this was a State statute. This is the Hawaii State abuse statute. This is the domestic violence statute out in Hawaii. It is a statute like the Wyoming broad assault statute that this Court considered in Bell. But it seems to me that there really is a mismatch between the Federal statute and the State statute because the State statute, as you say, only requires that it be a household member, while the Federal statute seems to require a specific relationship. Yes, Your Honor. And really what it is, the charge here, the Federal charge, is being convicted of a misdemeanor crime of domestic violence and being in possession of a firearm. It's a prosecution under Title 18, United States Code, Section 922G9. And it's not a felon in possession, but it's that you have this qualifying domestic violence conviction and you're in possession of a firearm. It's always going to be that they're mapping up a State statute to see whether it qualifies as one of those misdemeanor convictions. The standard for a misdemeanor conviction for domestic violence in Federal prosecution is that of an intimate partner. Intimate partner. Yes. Intimate partner. And that's one bit of language to use. And the Hawaii statute doesn't require that it be an intimate partner. That's correct, Your Honor. And what Bellis says, Bellis has two holdings. The first one has to do with this domestic relationship because Bellis also challenged that the underlying statute, the State statute, did not require as an element domestic the domestic relationship. Well, the way I see it, I see two problems. One is that under the new Supreme Court case, which says exactly what you may consider when you're applying the Taylor modified categorical approach, it does not include things that were considered here, such as the plea colloquy at the district court. It specifies, and I'm looking for the case. I'm sure you're familiar with it. Right. It specifies what you can consider, but it does not include a subsequent plea colloquy. It has to be the charging document, the judgment of conviction, and the other documents at that time, of what he was convicted at that time. And I don't see a document that says that fits your definition under 33A2 that I think you're trying to reach, which is it has to be the use or attempted use of physical force by a current or former spouse, parent, or guardian, by a person who is cohabitating or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated. We don't have any evidence of cohabitation from the underlying documents. Or that spouse, parent, or guardian, as opposed to in the State court record. Yes, Your Honor. And I think the answer is twofold. The first, the answer to the question is he's the parents of the children. So that's why he – that's why the defendant in this case – Now, where does that show up in the State documents that we're allowed to look at? Yeah. And that's going to be the second problem, Your Honor, and why it's sort of an attack on an issue that was not brought before the district court and not considered for the district court. So we didn't – the one issue brought up before the district court in challenging this predicate offense, an issue in this case, this misdemeanor crime of domestic violence, was just the force element. We never looked at domestic violence. We never looked at the domestic relationship between the two. That wasn't challenged before the district court. And the reason why – It certainly was challenged here. It wasn't – you believe it was not challenged in the district court. Pardon me, Your Honor? It certainly has been challenged here. It has. But the problem with that is that you're left with a record. You bring something before the district court. You say this statute doesn't qualify for this reason. That issue is addressed in a motion. The Court denies that motion. Now, up here for the first time, they're bringing the issue of the Court didn't consider extrinsic evidence to prove the domestic relationship. Well, the reason the Court didn't consider extrinsic evidence about a domestic relationship is because that issue was not before the district court. No, that's not the reason. It's because it can't. It cannot consider extrinsic evidence about the domestic relationship under what the Supreme Court has recently said. Except for those outlined by Your Honor earlier. It can consider – And those – it doesn't show up? It doesn't say? Those are just the ones that are in the record. And what other documents could you have brought in that would have been legitimate to bring in? Yes, Your Honor. That's the question. Yes, that's the question. And what's the answer? The district court only considered the judgment in this case and the charting papers. That's all it needed to look at for the force requirement. What it could have looked at, it could have looked at plea colloquies, as Your Honor mentioned earlier. It could have looked at plea colloquies. It could have looked at plea agreements. It could have looked at a number of other – Such things exist? As I said here, Your Honor, I don't know that because we never looked at that issue as to what else we needed to look at. Because for force, all we needed to look at was what part of the statute did this person plead to in the State court. And if I may, on the force issue, it was clear this was a statute that required – one part of the statute had an element that required physical abuse. And in this – the State statute and the State charting papers in this case, it was physical abuse to it by striking. So this is a domestic violence statute. This is a statute that requires physical force. Right. But the problem is of the category of person. You know, which – where does this person fit in under those documents that makes them eligible for this crime? And we're going to come back to the same problem, Your Honor, because it just was not before the district court. So it's not part of this record. Did you argue that it was waived in your red brief? I did, Your Honor. You did?  I said for the – it actually – that section wraps up by saying this is an issue that was not brought before the district court and it's waived for the same reasons as the second argument. Except that if it's a pure legal issue, I mean, we can't very well apply wrong law simply because, you know, it wasn't raised. I mean, you know, other types of issues we're more inclined to hold or waive, but we're not going to make an erroneous statement of law. And it runs into a different problem. At the sentencing at the time of this case, or actually at the underlying motion, the pretrial motion having to do with this challenge, that Supreme Court decision that Your Honor is referencing, the one that what we can look at and what we cannot look at, police reports was looked at by some circuits at the time. And the court had before them the police reports in this case. You know, it was actually that recent case. The name escapes me as well. Leocal. Leocal. Okay. Leocal. It carried over what Taylor said. I mean, the real problem, what it was really addressing was the problem that the lower courts had started getting fast and loose with what all could be considered. So they just merely reiterated Taylor and did it more strongly than Taylor had done it. But it's the same law as Taylor. And I think the only distinguishing fact before the force issue and the relationship issue is what this Court said in Bellis. And this Court separated out the two issues in Bellis because force has to be an element of the underlying offense. That's an important part. We have to look at what the person fled to, what they were convicted of, the element of that offense. Domestic violence, this Court said in Bellis, does not have to be an element. It's just something that he has to be convicted. Right. But we still have to have evidence that he was. And the Hawaii statute, as stated, does not provide that evidence. That much you agree with, right? I do, Your Honor. So the only questions is whether there is some procedural problem here. And you also agree that there's nothing in the current record that establishes that. That's true, Your Honor. And so the only argument is a legal argument. I mean, I'm not saying it's good or bad, and it may be right, but that's basically an argument. Yes, Your Honor. It's the first time we saw it in this brief that there was a problem with the domestic relationship. We said they waived it because it was not brought below. We don't have a record to combat it. In your brief time, will you address whether there's been a preservation of the error in the enhancement? Yes, Your Honor. And it's important that maybe the timeline aspect of this. This defendant was sentenced pre-Blakely. This was March of 2004, before June of 2004, when the Blakely decision was handed down. Post-apprendi? Post-apprendi pre-Blakely, yes, Your Honor. And when this decision came down, the district court is still getting a pre-sentence report from probation, still adopting findings of that pre-sentence report by a preponderance of the evidence. In this case, even post-Blakely, if he was sentenced post-Blakely, the defendant's admissions in this case, this is a defendant that broke into a drug house. He didn't have a gun upon breaking in, gets into a gun battle with people, and leaves with a gun. The enhancement that's applied in this case under 2K2.1 of the guidelines is that the firearm was stolen, not that he stole it. So he broke into a house, got into a confrontation, left with a gun. Per se, this gun is a stolen firearm. It was in a house belonging to someone else. He admits to possessing it, and he admits that it was taken during this confrontation. He admits that he took it from the person who possessed it. Are you relying on the waiver in the plea agreement or not? The waiver, yes, Your Honor, absolutely. He waived explicitly in his plea agreement, because this is a single-count indictment. He did not have to, and I see my time is approaching. I'll just answer this question. He did not have to enter into a plea agreement. He could have pledged straight up, and then as sentencing guideline determinations came down, he could have reserved his ability to appeal those sentencing guidelines determinations. He wanted to preserve the appeal, the first issue that's before this course, the first element. And in so doing, he bargained for a plea agreement with the United States that's going to include an appeals waiver, an appeals waiver up to the statutory maximum under this statute, which is 10 years. 10 years, that's right. All right. Thank you, counsel. Thank you. U.S. v. No Break is submitted. We'll take up Keenan v. Keenan-Watkins.
judges: Wardlaw,berzon, Fitzgerald